**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TEDDY HILL,

                     Petitioner,

    -v-                                        Civ. No. 9:04-CV-524
                                                    (FJS/RFT)

JAMES CONWAY, *Superintendent*,

                     Respondent.

**APPEARANCES:**                        **OF COUNSEL:**

TEDDY HILL
Petitioner, *Pro Se*
99-B-1948
Attica Correctional Facility
Box 149
Attica, N.Y. 14011

HON. ANDREW M. CUOMO            MARIA MORAN, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Respondent
615 Erie Boulevard West
Suite 102
Syracuse, N.Y. 13204-2455

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    *Pro se* Petitioner Teddy Hill was convicted of aggravated assault on a police officer, false

impersonation, and resisting arrest on June 10, 1999. Dkt. No. 1, Pet. at p. 1; Dkt. No. 12, Resp't's

Mem. of Law, at p. 1; State Ct. R. on Appeal, Ex. G, Tr. of Trial of Teddy Hill ("Trial Tr.") at 733.

Petitioner presently seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on the following

---

    [1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

grounds: (1) the evidence was insufficient to sustain his conviction for second degree assault because there was no proof of physical injury; (2) Petitioner received ineffective assistance of trial counsel; (3) his motion to suppress should have been granted; and (4) Petitioner was denied his choice of counsel. Pet. at pp. 5-6, Attach. 1(A), (B); Dkt. No. 27, Supp. Reply Mem. Of Law ("Supp. Mem."), at ¶¶ 1-30. For the reasons that follow, this Court recommends that the Petition be **denied**.

## I. BACKGROUND

According to the testimony adduced at trial, on the afternoon of October 17, 1998, Petitioner was sitting on the steps of a house at the intersection of West Onondaga and Putnam Streets in Syracuse, New York. Trial Tr. at 370-71, 430-33, & 490. Petitioner was accompanying Pamela Ratliff and a male companion,[2] who were standing approximately fifteen feet away under a tree. *Id*. at 372 & 396. Uniformed Police Officers Ronald Bricco and Patrick Phelps were in a marked police car on patrol in the area and noticed Petitioner and his companions. *Id*. at 371-73, 430-32. The area was known for illegal drug activity, loitering, and juvenile problems; citizens made numerous complaints and asked police to increase patrol. *Id*. at 370 & 431-32. Officer Phelps received a memorandum from Officer Maureen Buckland that she stopped several people at that location earlier in the week and recovered crack cocaine. *Id.* at 432.

Officers Bricco and Phelps parked their car and approached Petitioner and his companions. As they approached, the officers saw a pink, plastic glassine baggy, a lighter, a glass crack pipe, and the push rod used to fill the pipe on the ground directly under Ratliff and her companion. *Id.* at 372 & 433. Officer Phelps spoke to Ratliff and her male companion, learned that the man had an outstanding warrant, and placed him and Ratliff under arrest. *Id.* at 432-33 & 435-36.

---

[2] The name of the companion was not disclosed at trial.

Officer Bricco spoke to Petitioner, who appeared nervous. *Id.* at 372-73. He asked Petitioner his name, date of birth, and why he was there. *Id*. at 372-73 & 490. Officer Bricco testified that Petitioner told him he was "just hanging out" with Ratliff and the man. *Id*. at 375. Petitioner had no identification, but told Officer Bricco his name was Oliver L. Davis, and that his date of birth was June 7, 1966. *Id*. at 373 & 397. Petitioner answered Bricco's questions, prefacing them with "yes sir" and "no sir," which indicated a level of respect that was uncommon to Bricco during street encounters and suggested that Petitioner had a military background or had been in prison. *Id.* at 375-76. Bricco asked Petitioner if he had been arrested before, and Petitioner told him that he had completed parole. *Id.* at 375-76. Officer Bricco used his portable radio to call the 911 center to check for warrants for Oliver L. Davis. *Id.* at 374. The check revealed that there was no police record for an Oliver L. Davis with the date of birth given by Petitioner. *Id.* at 375 & 397-98. Officer Bricco's suspicion was aroused because, based upon Petitioner's claim that he completed parole, there should have been a record. *Id.* at 375-76. Officer Bricco warned Petitioner that if he lied about his identity, he could be arrested for false impersonation. *Id.* at 397. He asked Petitioner to accompany him to the patrol car where Bricco could run a further identification search in the computer. *Id.* at 376. Petitioner agreed. *Id.*

Officer Bricco directed Petitioner into the rear passenger seat of the patrol car. He was not handcuffed nor under arrest at that time. *Id.* at 376-77. Officer Bricco got into the front passenger seat and entered the information Petitioner had given him into the computer. *Id.* at 398. While he waited for a response, Bricco asked Petitioner how he could verify Petitioner's identity. Petitioner gave the name and phone number of a woman he claimed was his mother. *Id.* at 376-78. Officer Bricco called the woman, who told him that she had a son named Jimmy Davis who was thirty-eight years old, a description that did not fit the information provided by Petitioner. *Id.* at 377-78 & 408. With

suspicions further aroused, Officer Bricco again warned Petitioner about the ramifications of lying about his identity, and exited the patrol car.  He intended to open the rear door, speak to Petitioner further, and arrest Hill if he continued to lie about his identity.  *Id.* at 378 & 398.

As Officer Bricco opened the rear door, Petitioner pushed the door into him and fled.  *Id.* at 378-79, 398-99, & 436.  A chase ensued with Officer Bricco in pursuit of Petitioner, yelling at him to stop, *id.*; Officer Phelps called for backup, *id.* at 437.  As Officer Bricco continued to chase him, Petitioner jumped over a chain link fence.  Officer Bricco grabbed Petitioner's clothing, but lost his grip as Petitioner fell over the fence.  *Id.* at 379 & 399.   Officer Bricco also jumped over the fence and continued to chase Petitioner, yelling at him to halt because he was under arrest.  *Id.* at 379, 401, & 423-24.   Petitioner ran down the length of the fence and jumped over a second chain link fence.  *Id.* at 379 & 400.  He picked up a clay brick and raised it over his head as Officer Bricco climbed the fence. *Id.* at 379.  Bricco drew his gun and ordered Petitioner to drop the brick.  *Id.* at 379-80 & 409.  Officer Bricco testified that Petitioner threw the brick at him, striking him in the left temple.  *Id.* at 380-81 & 409-10.  Petitioner ran, and Bricco holstered his gun and followed.  *Id.* at 383.

Petitioner attempted to climb a third fence, but because it was a wood stockade fence he could not do so.  *Id.* at 383-84.  Bricco caught him and tried to handcuff him, but Petitioner struggled.  *Id.* at 384. The two fell to the ground as Petitioner was punching and kicking Bricco who, in turn, punched Petitioner in an attempt to handcuff him.  *Id*. at 384.  Bricco successfully handcuffed Petitioner's left hand, but Petitioner continued to struggle.  *Id.*  Petitioner got on top of Bricco, and told him, "I am going to kill you.  We are going to die here together."  *Id.* at 385.  Officer Bricco testified that Petitioner began tugging on his gun and he felt it being twisted in the holster.  *Id.* at 386-87 & 418.  He grabbed the gun to try to keep it in the holster as Petitioner unfastened the holster's safety strap.  *Id.* at 387.

4

Petitioner bit Bricco's hand, his top teeth digging into the fleshy part of the hand between the thumb and index finger and his bottom teeth biting into the butt of the gun.  *Id.* at 388 & 415-16.  Bricco managed to hit a signal button on his radio that transmitted a distress call to the 911 Center and he began to yell for help.  *Id.* at 388-89.

Susie Files and her mother-in-law, Ann Burns, saw Petitioner get out of the patrol car and run in the direction of Files' yard.  *Id.* at 466-67.  Files watched Petitioner jump over the first fence, with Bricco close behind.  *Id.*  She went home to lock her doors.  *Id.* at 467.  As Files pulled her screen door closed, she heard someone say "help, please help."  *Id.* at 468 & 475.  She saw two people wrestling next to her driveway and told Burns to call 911.  *Id.* at 468-69.  Burns testified that she also heard someone calling for help and that she saw Petitioner on top of Bricco.  *Id.* at 474-76.

Officer Phelps testified that he put Ratliff and her companion into the patrol car and drove around the block looking for Petitioner and Officer Bricco.  *Id.* at 437-38.  The police dispatcher broadcast that Bricco was emitting a distress signal from his radio.  *Id.* at 438.  Ann Burns flagged Officer Phelps down and told him that Petitioner and Bricco were in her daughter's back yard.  *Id.* at 438-39.

Officers Robert McLaughlin, James Morris and Joseph Gianuzzi also responded to the distress call.  *Id*. at 443-44, 451, & 458.  As Officer McLaughlin searched area backyards, he heard groaning and saw Petitioner on top of Bricco.  Petitioner was bleeding from the mouth.  He had Bricco in a head lock or choke hold and was punching him.  *Id.* at 445, 449, & 452.  McLaughlin jumped over the fence to render assistance and tried, without success, to pull Petitioner off Bricco.  *Id.* at 446 & 452.  Officers Morris and Gianuzzi saw McLaughlin climbing the fence and ran in his direction.  The three officers pulled Petitioner off Officer Bricco as Petitioner continued to kick and fight.  *Id.* at 447-48, 453, & 460.

Because Petitioner hid his hands underneath his body, his arms had to be pulled out one at a time in order to be handcuffed. *Id.* As McLaughlin pulled Petitioner's left arm free, he noticed there was already a handcuff on his left wrist. *Id.* at 447. In order to gain control of him, Officer Gianuzzi struck Petitioner with his wooden baton. *Id.* at 459. Yet, Petitioner continued to struggle. *Id.* at 448, 454, & 460-62. Eventually, the officers handcuffed Petitioner and walked him to the street. *Id.* at 461. The officers later learned that there was a parole violation warrant issued for Petitioner. *Id.* at 394-95.

Officer Bricco testified that he suffered abrasions and contusions on his head as a result of the struggle as well as an abrasion where the brick hit him. *Id.* at 390-91 & 411. He testified that the bite wound was flushed out at the hospital, that he was given antibiotics, and his hand was stiff for a week; at the time of trial, it was still stiff when it rained. There was a visible scar. *Id.* at 391. Bricco stated that he suffered a headache for a day and, if he had been scheduled to work the two days following the incident, he would have taken those days off. *Id.* at 391-92. His body was sore for a few days and he went for treatment "a couple of times." Moreover, he still had to have blood drawn to test for communicable diseases. *Id.* at 392-93.

Pamela Ratliff testified on behalf of Petitioner. *Id*. at 577-93. According to Ratliff, Officer Bricco escorted Petitioner to the patrol car and shoved him into the rear passenger seat. *Id.* at 578. She was not sure if Petitioner was handcuffed and did not remember telling an investigator that Bricco handcuffed Petitioner before putting him in the patrol car, or that Bricco pulled Petitioner out of the car and removed the handcuffs. *Id.* at 586-87. Ratliff testified that Officer Bricco slapped Petitioner across the face and Petitioner ran. *Id.* at 578-79, 84.

Petitioner testified on his own behalf. *Id*. at 489-558. He claimed that he was sitting on the steps waiting for his friend Vicky to return from the store. *Id.* at 490 & 513-14. He did not know

6

Vicky's last name, but during his conversation with Officer Bricco, she returned to the house, walked past them, and went inside. *Id.* at 514-15. Although he told Bricco he was waiting for Vicky, he did not point her out to him. *Id.* Petitioner testified that Bricco did not believe his explanation and searched him by going into all of his pockets. *Id.* at 491 & 515-16. He admitted he lied about his identity because he thought there might be a parole warrant for him. *Id.* at 492, 510-13, & 516. Petitioner denied telling Bricco he had completed parole or that he had been arrested before. He later admitted that Bricco asked if he had been arrested, but claimed he answered "no." *Id.* at 518-19.

Petitioner admitted he gave Bricco his grandmother's name, and that he told the officer she was his mother in order to conceal his identity. *Id.* at 519-20. Petitioner denied that he was nervous and testified that he was not concerned nor afraid of being arrested because he did not have much time left on parole. *Id.* at 521. Petitioner testified that when Bricco opened the rear passenger door, he slapped Petitioner across the face and asked him why he was lying. *Id.* at 494 & 523-24. Contrariwise, in a complaint filed with the Citizens Review Board, Petitioner claimed Bricco opened the back door and started punching him. *Id.* at 541-42. Petitioner admitted he ran, but claimed he had done so because he was afraid, having never before experienced "police brutality." *Id.* at 494. Petitioner explained that he had "knowledge of the Rodney King, Johnny Gammage situation, so I feared of becoming a victim like that. He hit me, so I ran." *Id.*

Petitioner testified that he never picked up a brick and was not holding one when Bricco drew his gun and told him to stop running. *Id.* at 498-99. However, in his Citizens Review Board complaint, Petitioner did not mention that Bricco drew his weapon. *Id.* at 544. He testified that Officer Bricco never told him he was under arrest. *Id.* According to Petitioner's testimony, Bricco repeatedly hit him and he pleaded with Bricco to stop. *Id.* at 499-501. He testified that he thought Bricco was not trying

7

to arrest him, but rather, was going to beat him, so he got on top of Bricco. *Id.* at 532-33. He denied intentionally trying to take Bricco's gun, threatening to kill Bricco, or that Bricco called for help. *Id.* at 502-04 & 549-50. Petitioner further testified that he bit Bricco's hand because he saw Bricco holding the butt of the gun and was afraid he intended to shoot him. *Id.* at 502-04. Petitioner claimed that throughout the struggle, he never once hit Bricco, but instead covered his head and arms to fend off the beating. *Id.* at 529 & 534. He admitted that he continued to struggle with and kick the other officers, and claimed that the officers continued to beat him even after he was handcuffed. *Id.* at 535-36. However, he did not claim in his Citizens Review Board complaint that the officers continued to beat him once he was handcuffed. *Id.* at 556-57.

Petitioner claimed that he suffered a broken jaw, a cracked wrist and cracked ribs, and that he had reconstructive surgery on the side of his jaw and chin. *Id.* at 504 & 538-39. Petitioner denied injuring his ribs in a football game earlier in the week, despite a photograph showing him wearing what appeared to be an ace bandage around his rib cage on the day of the incident. *Id.* at 539. In his Citizens Review Board complaint, Petitioner alleged that Bricco beat him with a night stick, breaking his jaw, but testified at trial he did not know what object, if any, Bricco used to strike him, and later admitted Bricco never struck him with a weapon or his gun. *Id.* at 545-47, 557-58, & 560.

On November 24, 1998, Petitioner was indicted by an Onondaga County grand jury. *See* Dkt. No. 12, Resp't Ans., Ex. U at A5-8. In that accusatory instrument, Petitioner was charged with attempted aggravated assault upon a police officer, second degree assault, second degree attempted criminal possession of a weapon, third degree criminal possession of a weapon, resisting arrest, and false impersonation. *Id.* at pp. A5-6.

Beginning on June 7, 1999, Petitioner was tried before a jury as to the foregoing charges, with

8

the Honorable Joseph E. Fahey, Onondaga County Court Judge, presiding.  At the conclusion of that

trial, Hill was convicted of second degree assault, resisting arrest and false impersonation.  Trial Tr.

at 733.  On August 24, 1999, Petitioner was sentenced as a persistent violent felony offender to an

indeterminate term of twenty years to life in prison on the second degree assault and two concurrent

terms of one year in prison for resisting arrest and false impersonation.  Dkt. No. 12,  Resp't Ans., Ex.

H, Sentencing Tr. ("Sentencing Tr.") at 34.  With the assistance of counsel, Hill filed a Notice of

Appeal.  Dkt. 12, Ex. U at A2.

On July 19, 2000, before his direct appeal was perfected, Hill filed a motion to vacate his

conviction pursuant to New York's Criminal Procedure Law ("CPL") Section 440.10 ("July 2000 CPL

Motion").  Dkt. No.12, Ex. I.  That application was opposed by the District Attorney.  Dkt No. 12, Ex.

J.  In a Decision and Order, dated October 3, 2000, Judge Fahey denied Hill's July 2000 CPL Motion

in all respects.  Dkt. No. 12,  Ex. L ("October 2000 DO").  The Appellate Division, Fourth Department

denied Petitioner's application for leave to appeal the October 2000 DO on March 19, 2001.  Dkt. No.

12,  Ex. N.

On January 3, 2002, also before his direct appeal was perfected, Hill filed a second CPL 440

motion.  Dkt. No. 12, Ex. O ("January 2002 CPL Motion"). That application was also opposed by the

District Attorney.  Dkt No. 12, Ex. P.  In a Decision and Order, dated February 25, 2002, Judge Fahey

denied Hill's January 2002 CPL Motion in all respects.  Dkt. No. 12,  Ex. Q ("February 2002 DO").

On July 26, 2002, the Appellate Division, Fourth Department denied Petitioner's application for leave

to appeal the February 2002  DO.  Dkt. No. 12, Ex. T.

On August 21, 2002, through counsel, Hill perfected the direct appeal of his convictions and

sentences to the New York State Supreme Court, Appellate Division, Fourth Department.  Dkt. No. 12,

Exs. U, App. (7/16/02) & V, Appellate Br. (8/21/02).  That court modified the judgment of conviction

by reducing the sentence for false personation from one year to three months, and otherwise affirmed

the convictions.  *People v. Hill*, 755 N.Y.S.2d 169 (N.Y. App. Div., 4th Dep't 2002); *see also* Dkt. No.

12, Ex. X.  The New York State Court of Appeals denied Petitioner leave to appeal on May 22, 2003.

*People v. Hill*, 793 N.E.2d 418 (N.Y. Ct. App. 2003); *see also* Dkt. No. 12, Ex. Z.

On May 11, 2004, Petitioner filed this Petition for a Writ of *Habeas Corpus*.  On October 26,

2004, Respondent filed a Response to the Petition, along with a Memorandum of Law and the state

court records.  Dkt. No. 12.  On March 31, 2005, Petitioner filed a Traverse.  Dkt. No. 16.  By letter

dated April 19, 2005, Petitioner requested that the proceedings herein be stayed so he could return to

state court to exhaust an additional claim that he was denied counsel of his choice.  Dkt. No. 17.  A

brief stay was granted, and, on May 16, 2005, Petitioner filed a third CPL 440 motion in Onondaga

County Supreme Court ("May 2005 CPL Motion").  Dkt. No.  21, Pet'r Status Rpt.; Dkt. No. 35, Ex.

AA.  That application was opposed by the District Attorney.  Dkt. No. 35, Ex. CC.  In a Decision and

Order, dated July 27, 2005, Judge Fahey denied Hill's motion in all respects.  Dkt. No. 35, Ex. FF

("July 2005 DO").  Permission to appeal to the Appellate Division, Fourth Department, was denied on

November 15, 2006, and leave to appeal was denied by the New York Court of Appeals on February

27, 2007.  Dkt. No. 27, at ¶ 5; Dkt. No. 35, Exs. KK & LL. On April 10, 2007, Petitioner filed a

Supplemental Reply Memorandum of Law in this Court, in which he raised this newly exhausted claim

for *habeas* relief.  Dkt. No. 27.

## II.  DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court

may not grant *habeas* relief to a state prisoner on a claim unless the state courts adjudicated the merits

of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by the Supreme Court of the United
> States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts
> in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006); *DeBerry v. Portuondo*,
403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v.
LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The AEDPA also requires that in any such proceeding "a determination of a factual issue made

by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting

the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also*

*Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)).

A state court determines a petitioner's federal claim "on the merits" and triggers the highly-

deferential AEDPA standard of review when the state court (1) disposes of the claim on the merits and

(2) reduces its disposition to judgment.  *See Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).  In

this regard, it is not necessary for the state court to explicitly refer to the particular federal claim or to

any federal case law.  *See id.*

However, if a state court does not adjudicate a petitioner's federal claim "on the merits," the

state court's decision is not entitled to AEDPA deference and instead, the federal *habeas* court must

apply the pre-AEDPA standard of *de novo* review to the state court's disposition of the federal claim.

*See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (citing *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d

Cir. 2001)).

## B. Sufficiency of Evidence

In the first ground of his Petition, Hill contends, as he did on direct appeal, that the evidence was insufficient to support his conviction for second degree assault because the People failed to prove that Officer Bricco suffered "physical injury."  Dkt. No. 1, Ground One; Appellate Br. at pp. 7-16.[3] Respondent argues that this claim is meritless.  Dkt. No. 12, Resp't Mem. at pp. 3-6.  The Appellate Division, Fourth Department, held that the evidence of physical injury was sufficient.  *People v. Hill*, 755 N.Y.S.2d at 171; Dkt. No. 12, Ex. X at p. 2.  Leave to appeal this claim was rejected by the New York Court of Appeals.  *People v. Hill,* 793 N.E.2d 418; Dkt. No. 12, Ex. Z.

A petitioner who challenges a conviction on the sufficiency of the evidence bears a "heavy burden." *United States v. Quattrone*, 441 F.3d 153, 169 (2d Cir. 2006) (citation omitted); *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002). The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged.  *See Fiore v. White*, 531 U.S. 225, 228-29 (2001); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). This inquiry "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original).  A *habeas* petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 324; *see also Schlup v. Delo*, 513 U.S. 298, 323 n.38 (1995).  The reviewing court is required to consider the evidence in the light most favorable to the prosecution and draw all

---

[3] Hill does not challenge the sufficiency of the evidence to support his convictions for resisting arrest and false impersonation.

inferences in its favor. *Jackson v. Virginia*, 443 U.S. at 319.[4]  "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" *Ponnapula v. Spitzer*, 297 F.3d at 179 (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)).

To sustain Hill's conviction for second degree assault, the People had to prove that Hill intended to prevent Bricco from performing a lawful duty, and that, in the process, he caused physical injury to Bricco.  N.Y. PENAL LAW § 120.05(3); *Gary v. Conway,* 2006 WL 3290149, at *12 (N.D.N.Y. Nov. 13, 2006) (Kahn, J); *People v. Coulanges*, 696 N.Y.S.2d 466 (2d Dep't 1999).  *See also* Dkt. No. 12, Ex. U, at A5-8.  Intent may be inferred from the circumstances, including the actions of the accused, and it may be proven by direct or circumstantial evidence.  *Stone v. Stinson*, 121 F. Supp. 2d 226, 247 (W.D.N.Y. 2000); *People v. Price*, 825 N.Y.S.2d 868 (N.Y. App. Div., 4th Dep't 2006).  "Physical injury" means impairment of physical condition or substantial pain.  N.Y. PENAL LAW § 10.00(9).

Here, Petitioner does not challenge the sufficiency of the evidence on the "lawful duty" element of second degree assault.[5]  *See* Pet. at Attach. 1(A) & (B); Dkt. No. 16, Traverse, at ¶¶ 7-13; Dkt. 27, Supp. Mem. at ¶¶ 31-39.  Petitioner challenges only the sufficiency of the evidence as to physical injury.  Pet. at Attach. 1(A) & (B); Dkt. No. 16, at ¶¶ 7-13; Dkt. No. 27, at ¶¶ 31-39.  This argument is without merit.  The testimony of both Officer Bricco and Petitioner establish that Petitioner punched

---

[4]  The *Jackson* standard is clearly established federal law as determined by the Supreme Court. *See Huber v. Schriver*, 140 F. Supp. 2d 265, 276 n.5 (E.D.N.Y.2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 114 (2d Cir. 2000)) (other citation omitted); *see also Santana v. Kuhlmann*, 232 F. Supp. 2d 154, 166-67 (S.D.N.Y.2002).

[5]  Making an authorized arrest is a "lawful duty" under New York law. *See Hill v. Miller*, 2005 WL 807044, at *3 (E.D.N.Y. Apr. 8, 2005); *People v. Winchester*, 790 N.Y.S.2d 238, 239 (N.Y. App. Div., 3d Dep't 2005).  The court notes that the testimony of Officers Bricco and Phelps regarding Petitioner's conduct on October 17, 1998, as well as Petitioner's own testimony, established that Petitioner intended to prevent Officer Bricco from performing a lawful duty, *i.e.,* his arrest. *See, e.g.*, Trial Tr. at 374-89, 423, 432-37, & 490-558.

and kicked Officer Bricco as he tried to arrest Petitioner, causing several abrasions and contusions on Bricco's head. *Id.* at 390-91 & 411. Photographs were admitted into evidence that showed Bricco's injuries as they appeared at the time of the incident. *Id.* at 389-92. Bricco testified that he suffered a headache for a day and that if he had not been off duty for the two days following the incident, he would have taken those days off. *Id.* at 391-92. Petitioner admitted he bit Bricco's hand. *Id.* at 503. The bite wound was flushed out at the hospital and treated with antibiotics. Bricco testified that his hand was stiff for a week and, at the time of trial, continued to be stiff if it rained. Bricco sustained a visible scar as a result of the bite. *Id.* at 388 & 391. Bricco testified that his body was sore for a few days and that he went for treatment "a couple of times," but still had to have blood drawn to test for communicable diseases. *Id.* at 392-93. The culmination of this testimony proves that Officer Bricco suffered injury "well beyond the minimal harm caused by 'petty slaps, shoves, kicks and the like.'" *Foster v. Miller,* 2007 WL 1893726, at *8 (S.D.N.Y. June 29, 2007) (quoting *Matter of Philip A.*, 400 N.E.2d 358 (N.Y. 1980)). Based upon this evidence, a rational jury could have concluded Hill was guilty beyond a reasonable doubt of second degree assault since all the elements of the crime were established. *See id.* (evidence sufficient to establish "physical injury" where victim was punched twice in the head and face, suffered headaches lasting two or three days, a split lip, and pain persisting for a week which was treated with Tylenol); *Jerrel v. Keane,* 1995 WL 653369, at *3 (S.D.N.Y. Nov. 7, 1995) (evidence sufficient to establish physical injury where the victim suffered a bite, resulting in a scar, multiple bruises and cuts, and a sprain to his right hand,  and the victim testified he felt a sharp pain when bitten and applied peroxide to the wound for five days).

The Appellate Division's determination that the evidence was sufficient to establish physical injury was not contrary to, nor an unreasonable application of, clearly established Supreme Court

precedent, and the petition on this ground should be **denied**.

### C.  Ineffective Assistance of Counsel

In the second ground of his Petition, Hill contends, as he did on direct appeal and in his CPL

440 motions, that his trial counsel was ineffective because he failed to adequately represent him.  Pet.

Ground Two, Attachs. 2(A) & (B); Dkt. No. 16, Traverse, at ¶¶ 16-17.  Specifically, Petitioner claims

that counsel (1) failed to present mitigating evidence in the form of Officer Bricco's medical records;

(2) failed to move to set aside the verdict on the ground that the evidence was insufficient to establish

that Bricco suffered physical injury; and (3) failed to prepare for a hearing to determine whether

Petitioner was a persistent violent felony offender.  Appellate Br. at pp. 18-21; July 2000 CPL motion.

Petitioner further claims that trial counsel had a substance abuse problem which interfered with his

ability to adequately represent him.  Pet. Ground Two, Attachs. (2)(A) & (B); Jan. 2002 CPL Motion.

Respondent argues that these claims are meritless.  Dkt. No. 12, Resp't Mem. at pp. 6-9.

Petitioner's July 2000 and January 2002 CPL motions were filed while his direct appeal was

pending but not perfected.  In the July 2000 CPL motion, Petitioner alleged counsel was ineffective for

not presenting Bricco's medical records at trial.  The state court considered this claim and rejected it,

explaining that Petitioner received meaningful representation.  Dkt. No. 12, Ex. L.  Although the state

court noted in its October 2000 Decision and Order that Petitioner raised "no issue that could not be

resolved on the trial record," it addressed the merits of the claims without reliance on a state procedural

bar.  *See* Dkt. No. 12, Ex. L, at 2.  In his January 2002 CPL motion, Petitioner claimed counsel was

ineffective due to an alleged substance abuse problem.  The state court first found that this claim was

barred under CPL § 440.10(2)(b) because it was based upon facts on the record and could therefore be

raised on direct appeal. Dkt. No. 12, Ex. Q.  It nonetheless addressed the merits of this claim, and

rejected it. *Id.*

On direct appeal, appellate counsel raised two of Petitioner's current *habeas* claims: (1) that counsel did not understand the concept of physical injury and, as a result, failed to move the court to set aside the verdict on second degree assault based upon a lack of evidence of physical injury; and (2) that counsel failed to adequately prepare for the sentencing hearing. Appellate Br. at pp. 17-20. The Appellate Division, Fourth Department, held that Petitioner was not denied effective assistance of counsel. *People v. Hill*, 755 N.Y.S.2d at 171. Petitioner's leave to appeal these claims was rejected by the New York Court of Appeals. *People v. Hill*, 793 N.E.2d 418.

To establish ineffective assistance of counsel, a *habeas* petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and (2) prejudice, *i.e.*, there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984) (cited in *Bell v. Cone*, 535 U.S. 685, 695 (2002)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997); *White v. Herbert*, 2006 WL 3728878, at *4 (N.D.N.Y. Dec. 15, 2006).[6] There is a strong presumption that counsel rendered adequate assistance as courts give high deference to counsel, and Petitioner "must overcome the presumption that the challenged action 'might be considered sound trial strategy.'" *Gatto v. Hoke*, 809 F. Supp. 1030, 1038 (E.D.N.Y. 1992) (quoting *Strickland v. Washington*, 466 U.S. at 689), *aff'd mem.,* 986 F.2d 500 (2d Cir. 1992); *see also Jackson v. Conway*, 448 F. Supp. 2d 484, 492 (W.D.N.Y. 2006).

A review of the record indicates that Hill's trial counsel properly represented him in all respects.

---

[6] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]'" 529 U.S. 362, 391 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).

Counsel's theory of the case was that Officer Bricco had no reason to approach Petitioner, that Bricco ceased acting as an officer of the law when he allegedly struck Petitioner, and that Petitioner ran because he was assaulted and feared for his life. Trial Tr. at 598-627. In support of that theory, counsel elicited testimony from Officer Bricco that over the years he had been the subject of citizen complaints. *Id.* at 420. Counsel called Pamela Ratliff to testify that she saw Bricco slap Petitioner. *Id.* at 577-87. He vigorously cross-examined the prosecution's witnesses, pointing out inconsistencies and establishing that Petitioner, too, had injuries. *Id.* at 396-420, 424-27, 441-42, 449, 456-57, 471-72 & 479. Counsel moved for a trial order of dismissal on two counts of the indictment (attempted aggravated assault and attempted criminal possession of a weapon) at the close of the People's case, and renewed the motion with respect to all counts of the indictment at the close of Petitioner's case. *Id.* at 483-86, 566, & 592-93. Counsel's representation resulted in an acquittal on three of the charges, including attempted aggravated assault upon a police officer and both weapons charges. *Id.* at 732-33.

Nonetheless, Petitioner claims counsel should have moved to set aside the second degree assault verdict on the ground that Bricco did not suffer a physical injury. Pet. Ground Two, Attach 2(A); Dkt. No. 16, Traverse, at p. 8. At sentencing, counsel moved to set aside the verdict on the ground that Officer Bricco was not acting in his capacity as a police officer because he slapped Petitioner, and, accordingly, Petitioner could not have assaulted a police officer within the meaning of New York Penal Law § 120.05(3). Sentencing Tr. at 3-5. Counsel likely understood, as noted above, that the evidence was sufficient to establish that Bricco suffered physical injury. *See supra* Part II.B. Counsel cannot now be deemed ineffective for failing to make a meritless argument. *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999). Counsel instead attempted to negate the other key element of the crime for which Petitioner was convicted - that the victim was a police officer performing a lawful duty. This

claim relates to trial counsel's tactical or strategic choices, which are "virtually unchallengeable." *Strickland*, 466 U.S. at 690; *Campbell v. Greene*, 440 F. Supp. 2d 125, 150 (N.D.N.Y. 2006) (quoting *Nieves v. Kelly*, 990 F. Supp. 255, 264 (S.D.N.Y. 1997)).  Based on the record, counsel's strategic decision was well within the wide range of reasonable professional assistance.  In any event, in spite of his speculation to the contrary, Petitioner cannot establish that but for counsel's alleged error, the outcome of the case would have been different. The Appellate Division's rejection of this claim was not contrary to nor an unreasonable application of clearly established Supreme Court precedent, and this aspect of Petitioner's ineffectiveness claim should therefore be **denied**.

Petitioner also argues that Officer Bricco's medical records showed that his injuries were minimal and insufficient to establish that he suffered "physical injury."  According to Petitioner, counsel was therefore ineffective for failing to present this mitigating evidence at trial.  Pet. Ground Two, Attach. 2(A).  To the contrary, the record shows that counsel cross-examined Bricco regarding the medical records in an effort to minimize the injuries.  The medical records reveal that the treating physician described some of Officer Bricco's injuries as  "multiple areas of shallow abrasion" and noted that there was " no open laceration."  Dkt. No. 12, Ex. I.  Counsel asked Bricco if he received treatment for his injuries and if he recalled "multiple areas of shallow abrasion with no open laceration" - language almost identical to that used by the treating physician - to which Officer Bricco answered, "That's correct."  Trial Tr. at 412.  Moreover, counsel likely understood that the medical records corroborated Bricco's testimony that he was, in fact, injured and received medical treatment for those injuries.  *Id.* 390-92.  By declining to move the records into evidence, opting instead to use them for cross-examination purposes only, counsel prevented the jury from reviewing this potentially damaging evidence during deliberations. This aspect of Petitioner's ineffectiveness claim should also be

**dismissed**.

Petitioner next alleges that counsel was ineffective because he did not prepare for the sentencing hearing.  Specifically, Petitioner points to the trial court's comment at sentencing that counsel had not done "a single thing in terms of preparing for this hearing today."  Pet. Ground Two, Attach. 2(A).  This comment, reviewed in context, does not support Petitioner's claim that counsel was unprepared for sentencing.

At the hearing, the People moved to have Petitioner declared a persistent violent felony offender based upon his convictions, upon guilty pleas, for first degree robbery in 1984 and second degree robbery in 1990.  Sentencing Tr. at 2-3, 10-12, & 15; *see also* N.Y. PENAL LAW § 70.08.[7]  Counsel asked the court for an adjournment to obtain the transcripts from these prior convictions in order to challenge their constitutionality.  Sentencing Tr. at 6-7.  The prosecutor gave counsel a copy of the transcript for the 1990 conviction, but did not have the transcript for the 1984 conviction.  *Id.* at 7-8.  After a pause in the proceedings, counsel again moved for an adjournment to obtain the sentencing minutes for the 1984 conviction, explaining that he had not attempted to obtain the minutes because he believed the prosecutor was going to obtain them and provide counsel with a copy.  *Id.* at 7 & 9-10.  It was on the heels of this explanation that the court commented, "Well, you know, Mr. Falco, when you're going to argue the constitutionality, you have got to be prepared to know what you're arguing.  I mean, what you're telling me, you haven't done a single thing in terms of preparing for this hearing today."  *Id.* at 10.  Counsel objected to this conclusion by the court, and proceeded to argue that

---

[7]  Section 70.08 provides that a persistent violent felony offender is "a person who stands convicted of a violent felony offense as described in subdivision one of section 70.02 . . . after having previously been subjected to two or more predicate violent felony convictions as defined in paragraph (b) of subdivision one of section 70.04."  Second degree assault, for which Petitioner was convicted, is classified as a violent felony offense. N.Y. PENAL LAW § 70.02(1)(c).  Petitioner's two prior convictions for first and second degree robbery are also violent felony offenses committed in New York within ten years of the present conviction, excluding the time Petitioner served in prison, thereby qualifying him for persistent violent felony offender status.  *Id.* at §§ 70.02(1)(a), (b), & 70.04(1); Sentencing Tr. at 10-12,16-18, 22, & 34.

Petitioner's prior convictions should not be used to declare him a persistent violent felony offender and, if they were declared constitutional, Petitioner should still not be so classified. *Id.* at 15-21. Petitioner has failed to demonstrate that counsel's performance was deficient, or that the outcome would have been different had counsel obtained the missing 1984 transcript - *i.e.*, that he would not have been sentenced as a persistent violent felony offender. The Appellate Division's rejection of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Accordingly, this aspect of his Petition should be **denied**.

Petitioner further claims that trial counsel suffered from a substance abuse problem that prevented him from zealously representing him. Pet. Ground 2, Attachs. 2(A) & (B). Specifically, he claims that counsel admitted himself into a rehabilitation center one and one half months after Petitioner's trial was over to recover from an addiction to crack cocaine. *Id.* Petitioner claims that this alleged drug addiction was the reason for counsel's failure to present Officer Bricco's medical records at trial. *Id.* He refers this court to his January 2002 CPL 440 motion, in which he argued that trial counsel had been arrested for driving while intoxicated, that police recovered a crack pipe in the car, that counsel had refused a blood test, and that one Aaron Gilbert tried to hire counsel one and one half months after Petitioner's sentencing but was informed counsel was in a rehabilitation facility. *Id.* at Attach 2(B); Dkt. No. 12, Ex. O.

The state court denied this claim on the ground that, pursuant to CPL § 440.10(2)(b), Petitioner's motion was barred because it was based on matters in the record and could still be raised on direct appeal. *See* Dkt. No. 12, Ex. Q. at pp. 1- 2.[8] A denial of a claim under CPL § 440.10(2)(b) rests on an adequate and independent state ground and this claim is therefore procedurally barred.

---

[8] This claim was not subsequently raised on direct appeal. *See* Dkt. No. 12, Ex. V, at pp. 17-22.

*Johnson v. Sabourin*, 2005 WL 2663039, at *4-6 (S.D.N.Y. Oct. 14, 2005); *Brown v. New York*, 374

F. Supp. 2d 314, 318-19 (W.D.N.Y. 2005); *Encarnacion v. Walker,* 1998 WL 34002608, at *4-5

(N.D.N.Y. Aug. 21, 1998) (Sharpe, M.J.), *adopted*, No. 96-329, Dkt. No. 17 (N.D.N.Y. Aug. 24, 1999)

(Scullin, D.J.).  That the state court also addressed the merits of the claim does not change that result.

*Fama v. Comm'r of Corr. Servcs.,* 235 F.3d 804, 810 n.4 (2d Cir. 2000); *Glenn v. Bartlett*, 98 F.3d 721,

724-25 (2d Cir. 1996).

This Court may review this procedurally barred claim only if Petitioner demonstrates cause for

the default and resulting prejudice, or that the failure of the federal court to review the claim will result

in a "fundamental miscarriage of justice" *i.e.*, that he is innocent.  *Calderon  v. Thompson*, 523 U.S.

538, 559 (1998); *Coleman v. United States*, 501 U.S. 722, 748-750 (1991).  To establish "cause"

sufficient to excuse a procedural default, a petitioner must show that some objective external factor

impeded his or her ability to comply with the relevant procedural rule.  *Coleman*, 501 U.S. at 753;

*Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999).  When a petitioner fails to establish adequate cause

for his procedural default, the court need not determine whether he suffers prejudice, since federal

*habeas* relief is generally unavailable as to procedurally defaulted claims unless both cause and

prejudice are demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*,  2006 WL

1977435, at *6 (N.D.N.Y. Mar. 21, 2006).

Petitioner has not established cause for the failure to exhaust this claim, and has never argued

in either the state courts or this proceeding that appellate counsel rendered ineffective assistance by

failing to argue in the state courts that trial counsel was ineffective due to a substance abuse problem.

Since Hill has not established cause, the court need not decide whether he suffered actual prejudice.

*See Stepney*, 760 F.2d at 45; *Staley v. Greiner*, 2003 WL 470568, at *7 (S.D.N.Y. Feb. 6, 2003).

Petitioner has also failed to present any new evidence to show actual innocence of the crimes for which he was convicted. *Schlup,* 513 U.S. at 327. Review of this claim is thus procedurally barred.

Even if this claim was not procedurally barred, Petitioner would not be entitled to relief. Petitioner has provided no evidence in support of his claim that counsel had a substance abuse problem at the time of Petitioner's trial and sentencing, nor that counsel's performance was deficient. As noted above, the record establishes that counsel properly represented Petitioner in all respects. This procedurally barred claim should be **dismissed**.

### D. Suppression claim

In Ground Three of his Petition, Hill alleges that Officer Bricco approached him without reasonable cause, that his arrest was therefore unlawful, and that statements he made to Bricco should have been suppressed as fruit of the unlawful arrest. Pet. Ground Three, Attachs. 3(A) & (B). Respondent maintains that this claim is not cognizable and should be dismissed. Resp't Mem. at pp. 9-11.

This Court agrees with Respondent. In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494-95; *see also Pina v. Kuhlmann*, 239 F. Supp. 2d 285, 289 (E.D.N.Y. 2003) ("It is well settled that [Fourth Amendment] claims are not cognizable for habeas corpus review where a State has provided a full and fair opportunity to litigate this issue."). The Supreme Court has since extended *Stone* to preclude *habeas* review of a "Fourth Amendment challenge to the introduction of a confession made after an allegedly unlawful arrest." *Glover v. Herbert,* 431 F. Supp. 2d 335, 338 (W.D.N.Y. 2006) (citing

*Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (*per curiam*) (reversing grant of *habeas corpus* where circuit court of appeals found there was an unattenuated causal link between the custodial statements made by respondent and a violation of the Fourth Amendment)). Thus, *Stone* bars *habeas* review of claims that statements made during or after an allegedly unlawful arrest should have been suppressed as fruit of an illegal arrest. *See Cardwell,* 461 U.S. at 572-73; *Glover,* 431 F. Supp. 2d at 338; *see also Gantt v. Artuz*, 1999 WL 1206733, at *3 (S.D.N.Y. Dec. 16, 1999) (review of claim that arresting officers did not have probable cause to stop petitioner precluded by *Stone*); *Joyner v. Leonardo*, 1999 WL 608774, at *3 (S.D.N.Y. Aug. 12, 1999) (no *habeas* review of search and seizure claim where probable cause to arrest was questioned). Following *Stone*, review of Fourth Amendment claims in a *habeas* petition is permissible only: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir.1992); *see also Ramdeo v. Phillips*, 2007 WL 1989469, at *27 (E.D.N.Y. July 9, 2007).

New York has a corrective procedure for Fourth Amendment violations, which is facially adequate. *See Capellan,* 975 F.2d at 70 n.1. Indeed, Hill availed himself of that procedure by making a motion to suppress any evidence recovered from him on the ground that the officers had no reasonable suspicion or probable cause to approach him or to arrest him, which the trial court denied after a hearing, and by appealing that denial.[9] Further, having reviewed the record, the Court concludes that

---

[9]   The Appellate Division determined that Bricco had an "objective, credible reason for initially approaching [Petitioner] and requesting information from him" because Petitioner and two others were seen loitering together in an area known for illegal drug activity. *Hill*, 755 N.Y.S.2d at 170. The court noted the officer saw drug paraphernalia at the feet of two of the suspects. Based upon this information, Bricco was entitled to ask Petitioner his identity and other pedigree information, as well as questions about what he was doing at the location. *Id.* The court further determined that those initial observations combined with Petitioner's furtive movements, his inability to produce identification, and his attempts to conceal his identity provided Officer Bricco with a founded suspicion that criminal activity was afoot, permitting him to

there was no unconscionable breakdown in the underlying process.  Hill's Fourth Amendment claim

is, therefore, barred by *Stone* and *Cardwell.*

### D. Denial of Counsel of Choice

Petitioner contends that he was denied counsel of his choice in violation of the Sixth

Amendment.  Dkt. No. 27, Supp. Mem. at pp. 2-11; Dkt. No. 37, Lt. Br., at pp. 1-9.  Specifically,

Petitioner alleges that the attorney who represented him at trial, Mark Falco, was not the attorney

retained by his father to represent him.  Petitioner asserts that his father retained Andre Sobolevsky

represent Petitioner on or about May 24, 1999.  Dkt. No. 27 at ¶¶ 9-10; Dkt. No. 37 at p. 3. He claims

that he later learned that Mark Falco shared office space with Sobolevsky, and that, although he

questioned it, Sobolevsky designated Falco *ab invito* to conduct Petitioner's trial.  Dkt. No. 7 at ¶¶ 11-

12; Dkt. No. 37 at p. 3.  In support of his claim, Petitioner attached an affidavit signed by his father,

James Handford, a copy of a receipt for legal fees, and the retainer agreement.  Dkt. No. 27, Exs. 1-3.

 He also attached a Notice of Motion, brought by Falco, which indicates that Mark Falco, of the law

firm entitled "Falco & Sobolevsky," is Petitioner's attorney.  Dkt. No. 27, Attach. A.  Petitioner further

claims that Sobolevsky was not authorized to delegate his representation to Falco, even if they were

part of the same firm, without his consent.  *Id.*  Respondent argues that these claims are without merit.

Dkt. No. 35, Resp't Lt. Br., with Attachs.

The state court rejected these claims, finding that although a criminal defendant has a right

under the state and federal constitutions to counsel of his own choosing, Petitioner never objected to

Falco's representation and did not move for a change in counsel after Falco entered his appearance.

---

detain Petitioner to "gain explanatory information."  Finally, the court ruled that once the dispatcher confirmed Petitioner
falsely identified himself, Officer Bricco had "at a minimum a reasonable suspicion of criminal activity," and the detention
was permissible.  *Id.*

Dkt. No. 35, Ex. FF at pp. 2-4 (July 2005 Decision and Order).  The court noted that, according to its records, Petitioner retained Falco, who then entered his appearance on June 3, 1999, and  Falco and Sobolevsky were members of the same law firm.  *Id.* at 3.  The court further noted that the Appellate Division determined Petitioner received meaningful representation nonetheless. *Id.* at 4.  Accordingly, it denied Petitioner's motion.

The right to counsel in criminal prosecutions is guaranteed by the Sixth Amendment, applicable to the states through the Fourteenth Amendment. *United States v. Gonzalez-Lopez,* 126 S. Ct. 2557, 2561 (2006); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989); *Lainfiesta v. Artuz*, 253 F.3d 151, 154 (2d Cir. 2001) (quoting U.S. Const. amend. VI and *Gideon v. Wainwright*, 372 U.S. 335, 342 (1963)). The Supreme Court has held that "an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *Gonzalez-Lopez,* 126 S. Ct. at 2561 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). This right, though qualified, may not be denied arbitrarily.  Deprivation of the right to counsel of choice is

> 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice-which is the right to a particular lawyer regardless of comparative effectiveness-with the right to effective counsel-which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed."

*Gonzalez-Lopez*, 126 S. Ct. at 2563; *see also Lainfiesta*, 253 F.3d at 154 (citing *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)).

The right to counsel of choice may be overcome "when it is outweighed by competing interests in the fair administration of justice or maintaining orderly trial procedures." *Lainfiesta*, 253 F.3d at 154; *see also Caplin & Drysdale, Chartered v. United States,* 491 U.S. at 624; *Wheat v. United States*, 486 U.S. at 159.

Here, the state court correctly identified Petitioner's qualified right to counsel of his choice as

the legal principle governing Petitioner's CPL motion, but denied relief for two reasons.  First, the court denied relief because the Appellate Division, Fourth Department, held that Petitioner received meaningful representation.  Dkt. No. 35, Ex. FF, July 2005 DO.  Since the Supreme Court has ruled that deprivation of the right to counsel of choice is "'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received," the fact that Falco was ultimately effective is irrelevant to the question of whether Petitioner was denied counsel of choice.  *See Gonzalez-Lopez*, 126 S. Ct. at 2563.

The state court's decision, however,  was not based solely on the determination that Petitioner received meaningful representation.  The court  also denied relief because Petitioner never objected to Falco's "numerous appearances" and never "requested a change of counsel."  Dkt. 35, Ex. FF, at pp. 2-4. The record supports that determination.  Falco entered his appearance on June 3, 1999, ten days after Petitioner's father apparently retained Sobolevsky. Dkt. No. 27, Exs. 1 & 3.  Falco told the court, "I've spoken to Mr. Hill.  He desires to hire me to do the trial."  Dkt. No. 12, Ex. E, Tr., Appearance, 6/3/99, at 2.  Petitioner, whom the record indicates was present in court, did not correct Falco and did not object when the trial court permitted Falco to enter his appearance.  *Id.* The record further indicates that Petitioner fully cooperated with Falco, indicating that he apparently agreed to Falco's representation. *See*, *e.g.*, Trial Tr. at 7-8.  Since Petitioner failed to object to Falco's representation on these grounds at any stage of the proceedings, until nearly eight years after his conviction, the state court properly denied relief on that ground.  *See Ante Ljubas v. United States*, 1987 WL 19951, at *1 (S.D.N.Y. Nov. 10, 1987) (*habeas* petitioner's claim that he was denied counsel of choice was meritless where he chose attorney Lopez to represent him, but at trial Lopez was replaced by attorney Light of the same law firm, and petitioner failed to object to Light's representation: "petitioner obviously agreed

to the arrangement with respect to Light's presence and representation in the trial since he made no objection to this arrangement on the trial or even on appeal but only in hindsight five years after his conviction.").

Moreover, Petitioner's claim is not that the government or the trial court arbitrarily or erroneously prevented him from being represented by counsel of his choice. *See, e.g.*, *Gonzalez-Lopez*, 126 S. Ct. at 2563 (court's denial of attorney's *pro hac vice* admission request was an erroneous deprivation of the defendant's Sixth Amendment right to counsel); *Lainfiesta*, 253 F.3d at 156 (court's refusal to permit chosen counsel to conduct cross-examination was arbitrary and a denial of defendant's right to counsel); *United States v. Stein,* 495 F. Supp. 2d 390, 393, 421-23 (S.D.N.Y. 2007) (government's interference, by threatening to indict an accounting firm and coercing it to limit and cut off its payment of legal fees of its employees violated the employees' constitutional right to counsel of choice). In fact, the record indicates exactly the opposite: that the state court protected Petitioner's right to counsel of choice. Petitioner was represented by attorney David Savlov from February 11, 1999 until June 3, 1999, the Friday before the jury trial was scheduled to begin, when Falco entered his appearance. The trial court allowed Falco, on the eve of trial, to enter his appearance based upon Falco's representation that Petitioner wanted him to try the case. Dkt. No. 12, Ex. E, Tr., Appearance, June 3, 1999, at 2. Instead, Petitioner's claim appears to be that ***retained counsel*** denied him his choice of counsel when he allegedly delegated his representation to Falco. "Thus, the truism that a defendant's choice of counsel should not be unnecessarily obstructed by the court is not implicated here." *Ante Ljubas v. United States*, 1987 WL 19951, at *2 (explaining that where a petitioner claimed he was "deprived of the counsel of his choice not by his adversary, the Government, or by the Court, but by the collusion of counsel of his choice and one of his associated lawyers," cases involving interference

with the right to counsel of choice do not apply).

Finally, Petitioner claims that Sobolevsky was not authorized to delegate his representation to Falco without Petitioner's consent.  In support of that claim, Petitioner relies heavily on a state court decision in *People v. Betillo*, 279 N.Y.S.2d 444 (N.Y. Sup. Ct. 1967). Dkt. No. 27, at ¶¶ 19 & 27-29; Dkt. No. 37, at pp. 1-3.  Petitioner's reliance is misplaced.  In *Betillo*, a retained attorney designated another attorney, who occupied the same suite of offices, to represent the defendant at sentencing without the defendant's consent.  The court found that a "retained attorney is not authorized to hire another attorney or to delegate his authority to another ***without the consent of his client***," and vacated the defendant's sentence, remanding it for re-sentencing on the ground that the defendant's right to counsel of choice had been violated.  *Id.* at 453 (citations omitted) (emphasis added).

In contrast, the record here demonstrates that not only did Petitioner consent to Falco's representation, he apparently hired Falco himself.  Dkt. No. 12, Ex. E, at p. 2. Thus, the holding in *Betillo* is inapposite.  In any event,  attorneys often use the services of associate attorneys during the course of their representation of clients.  *See Maurer v. McCoy*,  2002 WL 975308, at *4 (N.D.N.Y. Feb. 22, 2002) (Sharpe, M.J.); *Phillips v. United States*, 2001 WL 274092, at *5 (S.D.N.Y. Mar. 19, 2001). This District has held that "[w]ithout proof that the delegation of work to another attorney was unreasonable and prejudiced [the defendant], a habeas petition based upon such a claim must fail." *Maurer*, 2002 WL 975308, at *4. Petitioner here has offered no such proof, and, as discussed above, counsel properly represented him in all respects.

In sum, Petitioner was not deprived of his choice of counsel. The state court's rejection of this claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent, and the petition on this ground should be **denied**.

## III.  CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Hill's  Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **denied**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000); and it is further

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*), 892 F.2d 15 (2d Cir. 1989); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a) & 6(e).

Date:   June 2, 2008
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge